Taylor Lohmeyer Law Firm v. United States Taylor Lohmeyer Law Firm v. United States Taylor Lohmeyer Law Firm v. United States May it please the Court, Steve Knight on behalf of the appellant, Taylor Lohmeyer Law Firm. The central issue in this appeal is as follows. When the government becomes aware of the general nature of a legal engagement or legal advice and suspects that there may be something that should be investigated further but it does not know the client's identities or who to investigate, does the attorney-client privilege protect law firm records that would reveal those identities? The answer under Fifth Circuit case law, as well as case law from many other circuits, is yes. And that is why the district court erred by granting the government's motion to enforce. The facts of this case are not overly complicated. There was just one hearing, correct? There was one hearing, correct. And then it looked like at the end of the hearing the parties agreed they would exchange ex parte material. Is there anything relevant that's ex parte to our decision here? No, I don't think so. There were also filings on the day of the hearing and I think there may have been additional filings. But not anything pertinent? Correct. So the court considered really the arguments of counsel, the filings that had some affidavits and whatnot. One difficulty, I may be oversimplifying it, but the Liebman rule seems to be the one that you're particularly urging, is consistent with our case law and applies. But isn't it correct that at that hearing, counsel did tell the court that taxpayer one was a unique and one-off situation? Not exactly. What the second affidavit from the firm said is that based on the Russell Hendricks affidavit, the IRS knows in essence the substance of the types of advice that we gave. But so if Lohmeyer says, I'm reading Hendricks' declaration and from that I deduce they must know confidential communications, that's a very different story than Liebman. Right? That John Doe summons Liebman and said, here's the confidential communication, we want to know who. No, that's not what they petitioned in Liebman. And I want that to be clear because that's what the government argued as a way to try to distinguish Liebman. Yes. In fact, Liebman, let me just tell you what they were subpoenaing in that case because it's so similar here. In Liebman, the government suspected that the law firm had given all of its clients for whom it performed a particular type of transactional service particular advice that would reduce their taxes, and the government disagreed with that advice. So they didn't ask for, they didn't phrase their subpoena in terms of who to give the advice to. What they said quite broadly was they want, quote, books, records, papers, billing, ledgers, and any other data which contains, reflects, or evidences the names, addresses, social security numbers of the clients who paid fees in connection for the services. It's very similar to the summons that was issued here. And I would like to sort of broaden the court's analysis because I think that this court can make its decision on its own. Counsel, can I just make sure, are you reading from the decision in Liebman or from documents that were filed in Liebman? From the decision in Liebman. No, that's fine. I have it in my outline, and the prior site is that 808. I'll have to come back to that. Yeah, no, I've got it right here in front of me. But I think that scrutinizing the degree of wording in the summons and all that, I think Liebman completely supports our position for the reasons that I've said in the brief. But under the Fifth Circuit's case law, the analysis can even be broader than that, and it protects a law firm in this situation, in this instance. And I'd like to explain why. You have to begin with the notion that what Revenue Agent Russell Hendricks stated in her sworn affidavit that was used to then convince the court to allow this broad summons to be issued. What she says is that she is an expert in this field of figuring out if offshore accounts were used as a mechanism to avoid paying taxes. She characterizes herself as an expert in that field. She says in her sworn affidavit that based on her many years in this area of practice. I hate to interrupt you. Could you tell me, I've got the affidavit right here, are you reading from what part of the affidavit are you reading from? So let me give you some particular quotes. What she says is she specializes in offshore transactions for tax avoidance purposes. Record on Appeal 162 to 6030. She states in her affidavit that she focuses on the particular U.S. tax. The taxpayers that she focuses on, what she says in her experience, use, quote, U.S. professionals to provide legal advice. That's at Record on Appeal 166 to 67. She states that Taxpayer 1, which is what started all this, this is a former client of Taylor Lohmeyer Law Firm, came to the firm to seek that advice. That's at 170. I'm looking at a different record site, but it's like paragraph 11, paragraph 12. That may be the case. The affidavit, I think, spans 60-some odd pages, so there's a lot of things to it. She states in her affidavit that this particular firm set up an offshore structure and that its work is, quote, premised on the principle that a U.S. beneficiary is not taxed on the current earnings or distributions of the trust. That's what she says the advice the firm is giving its clients. This is with respect to Taxpayer 1? With respect to Taxpayer 1. She says specifically as to Taxpayer 1, and consistent with this principle or its business model or the advice it's given, that the firm advised him that he, quote, could borrow money from the offshore structure without U.S. tax obligations and that no income was reportable. Now, during her investigation, and this is a 60-some odd page affidavit, it's not all about Taxpayer 1. The whole reason she issues the affidavit is because she becomes convinced that the Taylor Lohmeier law firm provides the same type of advice to many clients who are interested in setting up an offshore account. Now, does the affidavit need to say that in order to trigger this exception to attorney-client privilege? No, and that's what I'm going to get. Well, that seems to be a close issue. So why do you think it doesn't need to say that? The reason it doesn't have to say that is a very careful analysis of the development of this area of the law in the Fifth Circuit, starting with Jones and concluding with the second Reyes-Reckie case. And give me a little bit of time because I need to walk the court through that. Your time is the one that's running. So in the Jones case, you start with this proposition that Jones is helping a client who was arrested on a drug charge. Some unknown person is paying the bills and paying the bond. The government becomes convinced that this person's motive in paying these bills suggests that they were either implicated in the drug situation or, what they said in the Jones opinion, is that he may have had completely separate problems that he was seeking and dealing with this law firm, particularly tax issues. The government suspected that somebody was funneling money into the firm and was avoiding the payment of taxes. So what they did is they issued a subpoena to the firm saying, give me all books and records that would reveal the identity of this payer. This court, relying significantly on the Baird decision, said that, look, ordinarily client identities are not privileged, but there is an important exception that we recognize. We have clearly recognized that an exception exists under certain circumstances where an attorney must conceal the identity of a client, not merely communications from inquiry. The court in Jones recognized that the government had, indeed, an interest in the identity. The government was very suspicious and curious. I'm going to interrupt you just because your time is running out, and that's a fair recitation of Jones. But as I understand it, that's sort of the last link theory that then evolves through our case law. My question here is much broader. This is an IRS summons. It's like a grand jury subpoena. They're not harassing and they're not phishing. They do have relevant information from Taxpayer 1. They want the IDs. Then the government at the hearing says, if there's anything privileged in any document that you would be supplying to us, withhold it, give us a privilege law. Why isn't that complete protection of the attorney-client privilege? Because the attorney-client privilege extends to the client identities because the government— Only where it's the last link. Only when the identity will then match with a disclosed confidential communication. But here their argument is we have no idea what the advice was other than a general level as to any other taxpayer. Judge, that's why going through the development of the case law in the Fifth Circuit is so important. Because the last link notion was what the Pavlik decision focused on. Granted, that was sort of an aspect of Jones, but that wasn't the totality of Jones. In Jones it dealt with the fact that the government was aware of or suspected why this payer may have done business with the firm. And it wanted to understand more details about it. Not really the last link. The court made a comment about the last link. Now, in the Pavlik decision, which came a little bit later, the court really focused on the last link. And they said Jones applies when this missing information would supply the last link. Then you get to the Reyes-Reckie decisions. They disavowed the last link notion. And the reason they did so was because in that case, Gagarin claimed that the payer identity was privileged. And on appeal, the Fifth Circuit said, look, first of all, you haven't established the nature of the privilege because there's no evidence that he was even a client. All that you argued is that if I give over his identity, the government will investigate him and possibly find the act of a crime, hence the last link issue. And that's why the district court protected the identity. The Fifth Circuit rejected that. And they said what is critical to the decision in Jones is that the government is aware of the general type and nature of legal services that are provided. It's curious about those services. But it is not entitled to them if there's an attorney-client relationship established. So you think that the confidential aspect of this, that the identity would then sort of close the loop on, is the general nature of the legal services sought by the client? When they're aware of the nature of the legal services? So in other words, in this, and I've got the Hendrick, the Russell Hendrick affidavit here. Paragraph 14 says, request number one in the summons attachment is aimed at identifying the U.S. persons at whose request or on whose behalf Taylor Lohmeyer acquired or formed a foreign entity, open to maintain any foreign financial account or assist in the conduct of any foreign financial transaction. In your view, getting the identity of the client that did that triggers this doctrine because of that language I just read? That is precisely correct. And let me read something from the Reyes-Reckie decision number two. This is what Judge King wrote, and it fully supports what you've just said. What Judge King wrote is, she gave an example. For example, a client may wish to consult an attorney concerning adopting a child, but not wish the matter to be made public. Such an individual normally will reveal the nature of his problem as well as the identity, and reasonably expect both to remain confidential. If the disclosure of the client's identity will also reveal the confidential purpose for which he consulted an attorney, we protect both the confidential communication and the client's identity. So in your view, then, is our case law diverged? Does it diverge from the Seventh Circuit's case law and BDO's side? BDO is completely inapplicable here because the target of the investigation in that case was the organization itself, was BDO. The government wasn't aware of and wasn't curious about BDO's clients, and they weren't looking at the reasons why BDO's clients may have consulted with an attorney or anything like that. And what Judge King wrote and what the Fifth Circuit held in the second case in the example that I just gave you is critical because the essence of the government's argument and what they've argued repeatedly is that because the Taylor-Lohmeyer Law Firm assisted not only in giving the advice, but they set up various transactions, allegedly, and those documents ordinarily would not be privileged. That's, in essence, their position. Well, counsel, the IRS agent interviewed Mr. Taylor, who died in 2016, obviously after the interview, and my understanding is that he estimated the firm represented 20 to 30 clients between the 90s and early 2000s about foreign entities. Now, this is the main partner in the law firm telling the IRS this. You could almost say it's a waiver. He can't waive the privilege for his client, but still, it's a critical fact to me. He's acknowledging the types of services. The government is curious about those services, and the only way they can draw the link to the nature of the professional advice and what the law firm did is by learning the identities. That's what this court says and has held repeatedly. I guess I'm still lost with my question, which is we don't know what the advice was that was given to the others, other than the general statements in the declaration. But my question to you that I asked earlier is, why isn't it sufficient for you to object document by document if, indeed, there is a confidential communication? Because no document is responsive to the subpoena unless it reveals a client identity, and they are not entitled to client identities under Fifth Circuit law. They are not entitled to the client identities. If Lohmeyer and Taylor were in the business of setting up foreign bank accounts, there's no communication in that. The government's wanting to know, did they set up the financial arrangements so the hedge fund folks could move their money offshore and not get taxed? They want to know who they did it for so that they can conduct an investigation of the taxpayers. They're not entitled to know that information under binding Fifth Circuit authority, under Liebman. Before your time runs out, I want to mention to you that your footnote one in your brief, at page one, where your statement in your brief is, this is an important case that, for understandable reasons, has garnered national attention. And then you cite numerous articles from newspapers otherwise, such as the government is trying a clever, some sort of clever end run, et cetera, et cetera. But that really has no place in a brief, counsel. You ought not put that sort of stuff in a brief. Okay, Judge, understood. You have a volatile. Thank you. Thank you. Good morning, Your Honors. Douglas Runney for the United States. Your Honors, the only issue in this appeal is whether the law firm can withhold all records responsive to an IRS subpoena seeking information about a subset of its clients pursuant to a blanket privilege claim with no showing of any confidential communications of legal advice. Could the IRS sort of identify a law firm that practices along the southern border and just say, you know, we're curious. Your clients may be all affiliated with cartels. So instead of pursuing them, we're just going to ask you for your entire client list. That sounds pretty similar to the Jones case, Your Honor, and probably not. It sounds like there wouldn't even be a reasonable basis to get past the ex parte showing in the kind of case you're talking about here. You mean relevancy, or it would be two owners, or it wouldn't infringe attorney-client privilege? I think if the IRS is basically fishing out there, which is kind of what the example you're suggesting sounds like. Well, they're not fishing. They say, you're right there. We've noticed that your past clients are cartel figures. And so we'd like to know all your client lists. That kind of sounds similar to the Jones case in that... Kind of sounds similar. That's right. Go ahead with your argument. Sorry, Your Honor. Well, I don't know. So let's... Mr. Knight made a very specific argument about our case law. Yes. And that the second Reyes-Racania case, the 1991 case that Judge King wrote, holds that the, and I'll read it, the confidential purpose for which the client consulted an attorney is privileged. And so that's from the example of the client who wants to adopt a child. I guess, why don't you respond to that. Is that your understanding of our case law? And then we can talk about how it applies to the affidavit and the summons here. If that constitutes legal advice, which, and that was the finding that was made in Reyes-Racania, the district court looked at sealed filings submitted by the attorney and the person who was claiming they were the client and said there was adequate showing here of an attorney-client relationship and an inextricably intertwined communication of legal advice that I believe they said was simultaneously made. So the district court didn't in camera look at the document in question there? I believe it was sealed. Okay, but it was before the district court to look at it. Right. Okay. And so on those facts, this court found there was no abuse of discretion in the district court's findings there. Initially, this court reversed the district court, saying you didn't make the adequate findings in order for this to be found to be privileged. But based on that, after it got sent back and came back, the court said there's an adequate showing here. Because it's inextricably intertwined with the disclosure of privileged legal advice, it is privileged. My question is what was the privileged legal advice in the case? It's not entirely clear. Not clear. But it is clear that the district court found that that was privileged, and it may be related to the individual's motive for seeking legal help in that case. Okay. So if a client of Taylor Lohmeyer sought its services for Taylor Lohmeyer to acquire or form a foreign entity, open or maintain a foreign financial account, or assist in the conduct of any foreign financial transaction, is that information privileged such that if I get the identity of the client who sought that advice, I have breached attorney-client privilege? We would submit that it's not, Your Honor. I think that relates to the general nature of the legal services provided, which this court has explained in the Wen case, for example, which we cite in our brief, is not privileged. And another case that stands for that proposition, which we cited in our brief, is the Chargill case out of the Second Circuit. And there are other authorities along those lines that are more specific to tax matters that are cited in our submissions to the court below at Record 239. Do you know whether if a client seeks a law firm to do these things that I've just read, are there independent legal obligations that that be disclosed? You know, forming a foreign entity, is there an independent legal obligation so that it doesn't matter really whether it's privileged in and of itself? I mean, it's not privileged because you have an independent legal obligation to disclose it. There may be. It may depend where and what the rules are regarding that specific entity. There might be disclosures that the client would have to make on their tax returns. For example, if you have a foreign account that's over $10,000, you generally have to disclose that on your tax return and file the FBAR form. Yeah, but we'd have to get into more granular detail, I think, in order to figure that out. Yes. But if you're generally talking about the general nature of the legal services, and this is a key disagreement here clearly, our position is that's not privileged. And as your honors noted, we recognize that this was served on a law firm. We anticipated that there would be privilege issues here, which is why in the summons itself we requested information equivalent to a privilege log in response to this to the extent that they were claiming the privilege, and that's at record 98 through 99. And we've never taken the position that there are no privilege records at all here. And as this court has stated in the EEOC case, there's no presumption that a communication is privileged just because a lawyer is involved. And there have been many cases where IRS summonses and grand jury subpoenas have been served on law firms. So what is the—I'm sorry, finish your answer, and I'll ask you after you finish. Just the point was it's just not that unusual, and we tried to take measures to be sensitive to that here. Establish the timeline for when Mr. Taylor, the deceased partner, when he was interviewed and estimated the firm represented 20 to 30 clients between the 90s and the early 2000s about foreign entities, part of the government's declaration. How is that—what's the timeline for that in conjunction with the negotiations with Taxpayer One that ended up his paying the back taxes? Are you asking when did Taylor disclose that in terms of— Yes. It was before they reached— All right, before Taxpayer One negotiations. Before he reached a final agreement on that. But after it had begun. Yes. Yes, Your Honor. And the way I—I'm not entirely sure from the record what we have. It does suggest that at least initially Taxpayer One was not waiving the privilege. And so some of these discussions were not thought to involve privilege matters. This is—John Doe summons is not an area of law I know well. They're sort of the equivalent of a grand jury subpoena, correct? In general, an IRS summons is. It's when you're starting to look for evidence of a crime. Yes. It's an inquiry. Yes, correct. Now, in the grand jury subpoena context, when an assistant U.S. attorney seeks one against a lawyer, it has to get approved at multiple layers. Is that true also in the IRS context? There are— Does any agent just issue a John Doe summons to a law firm? I don't believe so, Your Honor. And generally there are procedures within the Department of Justice before we'll go into court and enforce law. The oddity of this Liebman case law to me, when I looked at the hearing, the district court itself was trying to promote a compromise. Do you recall that? Yes. The district court was saying, why don't we redact the client names and give you the documents? And the government's response was, well, that'll walk right into Liebman. If you redact the names and we get the communications, then we can't get the names. That's part of the— Predicament. Predicament, yes. It's an odd thing. So instead, the way the John Doe summons works is you seek neutral business-related evidence. You do not ask for any confidential communication. In fact, you assure the recipient that they can seek to assert privileges to documents. But you do ask for the names. Is that—am I correct in the context? Yes, Your Honor. Okay. Yes. And that's the procedure we followed here. All the specific advice, as I think became apparent in my colleague's discussion here, was that all related to things that Mr. Taylor advised taxpayer one. These aren't things that the revenue agent knows the firm necessarily told to the other John Does at issue here. And that's the fine line because when it ends up in her declaration, she's speaking more broadly. Right. Then at the hearing, I thought that the law firm was saying taxpayer one was different. He was unique. He didn't follow our advice. We didn't know. That's part of what they were saying, yes. They said there were some key distinctions between taxpayer one and some of the other clients at issue here, including that the other clients didn't necessarily use offshore corporations. They didn't assign income to offshore trusts in the same way. So they said there were distinctions here, which suggests that there would have been different advice given to these clients. And I think just underscores that this was a broader request for information about their clients. We had a reasonable basis to inquire, but we do not know what they necessarily advised these clients. And, Your Honors, we would submit that BDO-Sideman is consistent with the law of this circuit. We would submit that that is the most applicable analogy here because in that case, the IRS was seeking information about clients of the accounting firm who participated in a number of different types of tax shelters. The court there ultimately held that participation in one of those 20 types of tax shelters described in the summons would not disclose a motive or other confidential communication of privileged advice. And we think that's what this would disclose. From this, we would learn that these various clients participated in various types of foreign entities or accounts, but we don't necessarily know what the firm advised them or what their motives were for participating in those procedures. If Your Honors have no further questions, I would just want to close by noting that the attorney-client privilege is intended to encourage people to communicate with attorneys in order to conform their conduct with the law. And because the privilege prevents the disclosure of relevant evidence and impedes the quest for truth, it has been said that it must be strictly confined within the narrowest possible limits of the logic of that principle. And this is the Second Circuit in the Schragel case. They went on to explain that it seems evident to us that a broad privilege against disclosure of the identity of clients and a fee information might easily become an immunity for corrupt or criminal acts. Such a shield would create unnecessary but considerable temptations to use lawyers as conduits of information or of commodities necessary to criminal schemes or as launderers of money. The bar and the system of justice will suffer little if all involved are aware and assured that safety from such disclosure does not exist. And if Your Honors have no further questions, we would submit on the briefs and submit that the District Court's decision was narrow and reasonable, and we would request that it be affirmed. Well, I just have a quick question for you. As I understand it, the law firm's declaration states their other client situation is different from Taxpayer 1. Is that correct? Yes. How do we take that into account? How does that play into this question? It's a little odd situation because to the extent that they were coming out and saying that, for example, if they said the opposite, if they said these clients all received the same exact advice as Taxpayer 1, generally speaking, disclosing an aspect of a privileged communication selectively would waive that. So that would be problematic. Here they're kind of saying the opposite, it sounds like, but that doesn't really undercut the reasonable basis we have to think that something might have been going on here, but it also suggests that they did not receive the same exact advice and we don't know the advice. So we think it actually supports our position. All right.  May it please the Court. I think that based on the argument that we've heard, the disconnect here is that in this area of the law that we're dealing with, under Jones and the other Fifth Circuit cases, we're not dealing with the need necessarily to protect what is ordinarily thought of as a privileged confidential attorney-client advice. And that's the argument is, look, just give us a privilege law. We're not asking you for your privileged attorney-client advice. That isn't the issue in this case. The issue in this case is whether or not the identity of the client itself, not the advice given, the identity in and of itself is privileged. The general rule is typically not. The exception to the general rule acknowledged in Jones and all these other cases that we've talked about today, the exception is invoked when the government becomes aware of what this client's motivation might be for seeking the services. To perform an adoption, for example. Somebody may go to a law firm and have legal questions about legalities of a particular adoption, and they want the attorney to walk through the adoption process. If the government investigates somebody and finds out that the manner in which this was done was not in accordance with the law in all respects, and let's say they investigated one particular client and found that out, and they issue a mass subpoena saying, give us all of your records for anybody that you've given advice to. We don't want to know the advice about the adoption, but we want to see whether or not the adoptions that you've helped others with were properly performed. We have a need to investigate. Give us that list. Give us all records and documents that show, payment records, the actual adoption agency records. We want it all. What Judge King wrote, and it is squarely applicable in this case, is that you don't get the identities. When you suspect that there's a need, something was done, you suspect there's a need for additional investigation because something may not have been done right, and that's what they want in this case. The identity becomes privileged. The issue is not the particular advice. Once they're aware of the nature of the services that were performed and they suspect something was untoward and they want to know for sure, the issue is not whether or not the transactional documents actually reflect things that could be redacted as ordinary attorney-client privileged advice. The issue is any responsive document that bears the identity, that's what they're asking for so that they can perform an audit. The identity itself is privileged. The documents that are responsive to their subpoena reflect the identities. That's what they've asked for. So therefore, in my understanding, you would urge that the district court's compromise be one your firm would have to adhere to. In other words, all these documents would be turned over with the IDs redacted. It's worse than that, though. My position is that they don't get to have any of the documents because the only reason the documents are relevant to them is that they will enable them to ascertain the client identities. Even if I were to redact a client identity from a document, if that's the only thing I'm allowed to redact, what if the document itself has the name of some foreign bank or foreign company or whatever? Then the next thing you know is there's a subpoena that's issued. They've tracked that down, and a subpoena goes to them to find out any documents that you've ever exchanged with the law firm. All as a way to get to the one and only thing that they really want to know. That's the client identity. That's why, importantly, in the Jones case, the Reyes-Reckes decisions, the Liebman case, every case that has recognized that the client identity itself is privileged has not talked about this in terms of, we'll do a privileged dog and do partial redactions and this and that. These documents are categorically privileged, and the government subpoena is rejected outright as a clear violation of the attorney-client privilege. What he's argued is that they don't really know what the advice was given. They don't really suspect necessarily much of anything. Well, you say in your declaration that your client's situation is different. I don't know why you put that in your declaration, but that's where you're saying your client's situation is different from Taxpayer 1. In effect, you're saying we didn't help them establish offshore entities. I think all he said is that the same advice wasn't necessarily provided across the board to everybody. It probably depended on what wants and needs they had. I mean, not everybody's going to have the same assets, the same desires and whatnot. But the point is, the only reason that they want to have these documents is what the revenue agent said in her declaration. The notion that, look, we have no idea what they're going to uncover. That notion is not true. It's not supported by the record. What she said in the affidavit is that the summons is important because it will uncover, quote, substantial evidence regarding the identity of the U.S. taxpayers with offshore structures used to avoid or evade paying taxes. Thank you, Counselor. Thank you.